PIRO, Appellant,

v.

FRANKLIN TOWNSHIP et al., Appellees.

[Cite as *Piro v. Franklin Twp.* (1995), 102 Ohio App.3d 130.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 16929.

Decided May 24, 1995.

134

James Rudgers and Suzanne Porter, for appellant.

*Al Schrader,* for appellees.

SLABY, Judge.

Joseph E. Piro appeals from summary judgment granted in favor of the appellees, Franklin Township, the Franklin Township Police Department, Ronald Fuchs, William Endres and Daniel Davidson. We affirm in part and reverse in part.

Piro was a third-year law student at the University of Akron at the time of the events giving rise to this case. He enjoyed hunting; to this end, he had sought and received the permission of Bobby Ray Holland, a Franklin Township landowner, to erect two metal tree stands on Holland's property. Piro claimed that each stand was worth at least $350.

In October 1991, Piro discovered that one of his tree stands, which had been padlocked to a tree, had been stolen. He reported the theft to the Franklin Township Police Department. Endres, a lieutenant with the department, took the report. Piro told Endres that he suspected Gary and Tom Anderson ("the Andersons"), who lived on property adjoining the Holland property, of the theft.

In the following days, Piro obtained more information that established the Andersons as the thieves. He believed that the Andersons would return to the Holland property in an attempt to steal the remaining tree stand. On one evening, he went to the Holland property carrying a sheriff's badge, a shotgun, and handcuffs. As he approached the tree stand, he saw flashlight beams and heard voices. The voices came from behind a row of hedges. Piro yelled at the people, ordering them to step out into the open. Receiving no response, Piro stepped through the hedges and found the Andersons. After a brief verbal confrontation, Piro shined a flashlight on the badge, said that he was a Portage County sheriff's deputy, and pointed the gun at the Andersons. The Andersons admitted stealing Piro's tree stand and led him to the spot where they had taken the stand.. Piro told the Andersons that he was making a "citizen's arrest" and placed the handcuffs on them. He led the Andersons to Holland's house, where the Franklin Township police soon arrived.

The Andersons were charged with theft. Piro was charged with impersonating a peace officer. Two felony abduction charges were added a few days later. A grand jury indicted Piro on the impersonation charge but not the abduction charges. The impersonation charge was eventually dropped.

During this time, Piro graduated from law school and applied to take the Ohio bar examination. As a prerequisite to the examination, he filled out a character statement. On this statement, he listed several crimes with which he had been charged. He had failed to disclose these charges on his law school application.

The two members of the Akron Bar Association Admissions Committee who interviewed Piro gave qualified approvals to Piro's application for the bar examination. Because a qualified approval is equivalent to a rejection of the application, see Gov.Bar.R. I(10)(E), Piro appealed to the Supreme Court of Ohio's Board of Commissioners of Character and Fitness ("the Board"). The Board extensively discussed Piro's failure to disclose his past criminal record and the events leading to the impersonation charge. It concluded that these incidents required the disapproval of Piro's application:

"The Board believes that his decision with respect to his law school application showed a lack of candor and integrity not appropriate for a lawyer. The Board is also bothered that Mr. Piro continues to evidence some reluctance to take the responsibility he should for this conduct. Further, the lack of judgment and the somewhat implausible circumstances which led Mr. Piro to be charged with impersonating a police officer are troubling to the Board. The Board therefore concludes that Mr. Piro has not established by clear and convincing evidence his character and fitness for admission to the practice of law."

The Supreme Court of Ohio agreed with the Board's report and recommendations and rejected Piro's application. *In re Applications of Piro* (1993), 66 Ohio St.3d 400, 613 N.E.2d 201.

Piro sued the appellees for intentional and negligent infliction of emotional distress, defamation, invasion of privacy, malicious prosecution, and abuse of process. Essentially, he claimed that appellees' allegedly improper arrest caused severe damage to his legal career. Appellees answered and moved for dismissal or, in the alternative, summary judgment. Appellees argued that (1) the Supreme Court's opinion in *Piro* showed that Piro's own actions, not appellees', caused the damage to his career; (2) Piro could prove no set of facts entitling him to relief for his claimed damages; (3) appellees' actions were protected by political subdivision immunity under R.C. Chapter 2744; and (4) Piro was unable to prove the elements of each of his claims. After Piro responded, the trial court granted summary judgment for appellees.

Piro appeals to this court. He asserts four assignments of error, which we rearrange to facilitate discussion.

### Assignment of Error III

"The trial court erred in granting summary judgment to Appellees on grounds of political subdivision immunity."

Piro asserts that the trial court erred in concluding that appellees' actions were protected by the political subdivision immunity provided in R.C. Chapter 2744. He notes that political subdivision employees are not immune from liability if they performed their actions with malicious purpose, in bad faith, or in a wanton or

reckless manner. See R.C. 2744.03(A)(6)(b). He claims that Endres and David-son, who was a sergeant with the police department, acted maliciously, recklessly, or in bad faith by bringing charges against him without any legal basis for doing so and with the knowledge that he had affirmative defenses to the charges, by failing to inform the prosecutor of facts tending to show that the charges were unwarranted, and by refusing to investigate further as to information that exonerated him. Piro states that Endres also acted maliciously by using ethnic slurs and by telling him that "he wouldn't have to worry about being an attorney." Piro claims that Fuchs, the chief of police, acted maliciously or recklessly because he was aware of information tending to exonerate Piro, but did not act on this information. As for the township and police department, Piro argues that R.C. 2744.07(B) imposes liability on a political subdivision and, therefore, does not warrant immunity for those parties.

■ We apply the same standard as the trial court in reviewing an entry of summary judgment. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123. Pursuant to Civ.R. 56(C), sum-mary judgment is proper if:

"(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

This assignment of error requires us to examine whether Piro's arrest was supported by probable cause. Accordingly, we discuss that issue first. We then analyze the trial court's finding that appellees were protected by political subdivision immunity.

## A. Probable Cause

Piro was originally arrested for impersonating a police officer; the felony abduction charges were added later. Therefore, our focus is on whether appel-lees had probable cause to arrest Piro for impersonating a police officer. Piro claims that he had an affirmative defense to this charge and that appellees knew of his defense before arresting him. R.C. 2921.51(F) states that "[i]t is an affirmative defense to a charge under [R.C. 2921.51(B) ] that the impersonation of the peace officer was for a lawful purpose." Piro argues that he had a lawful purpose in making a citizen's arrest of the Andersons: he suspected that the Andersons had stolen his tree stand. Piro alleged that the value of the stand was at least $300, which made the theft of the stand a felony pursuant to R.C.

2913.02(B). R.C. 2935.04 permits any person to effect a warrantless arrest of a person who has committed a felony or who the arresting person has reasonable cause to believe has committed a felony.

■ In reviewing whether appellees had probable cause to arrest Piro, we must determine whether the facts known to them at the time of the arrest would warrant a person of reasonable caution in the belief that an offense had been committed. *Beck v. Ohio* (1964), 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142, 148; *State v. Price* (1992), 80 Ohio App.3d 108, 111, 608 N.E.2d 1088, 1089. Piro's arrest sheet shows that he was arrested for violating R.C. 2921.51(C). The indictment charged him with violating not only that section, but also R.C. 2921.51(B). Those sections read as follows:

"No person shall impersonate a peace officer or a private policeman.

"(C) No person, by impersonating a peace officer or a private policeman, shall arrest or detain any person, search any person, or search the property of any person."

R.C. 2921.51(A)(1) defines "peace officer" to include a sheriff, deputy sheriff, or other member of a political subdivision's organized police department. "Impersonate" is defined in R.C. 2921.51(A)(3) to include "display[ing] the identification of a particular person."

■ We find that appellees had probable cause to arrest Piro for impersonating a peace officer pursuant to R.C. 2921.51(B). Piro admitted that he was carrying a sheriff's badge that he was not authorized to carry. Piro may have had a privilege to arrest the Andersons. He did not, however, have the privilege to show the Andersons a sheriff's badge and lead the Andersons to believe that he was a law enforcement officer.

■ Appellees also had probable cause to arrest Piro under R.C. 2921.51(C). By impersonating a peace officer, Piro detained and arrested the Andersons. R.C. 2921.51(C) specifically forbids this conduct. Lawful purpose is not an affirmative defense to a charge under R.C. 2921.51(C). See R.C. 2921.51(F). Based on the foregoing, appellees had probable cause to arrest Piro for impersonating a peace officer.

## B. Immunity of Davidson and Endres

Piro claims that the trial court erred in concluding that Davidson and Endres were entitled to immunity. His claim is based primarily on two arguments: first, that the charges were without any legal foundation; second, that Davidson and Endres failed to adequately investigate the case, particularly those facts that supposedly exonerated Piro.

■ Immunity for a political subdivision employee is provided by R.C. 2744.03(A)(6). That section grants the employee immunity from liability in connection with a governmental or proprietary function unless one of three exceptions applies. The exception that is relevant to this case is found in R.C. 2744.03(A)(6)(b), which states that the employee is not immune if "[h]is acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." "Malice" refers to the willful and intentional design to do injury. *Jackson v. Butler Cty. Bd. of Cty. Commrs.* (1991), 76 Ohio App.3d 448, 453, 602 N.E.2d 363, 366. "Bad faith" connotes a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id.* at 454, 602 N.E.2d at 367, quoting *Slater v. Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148, 21 O.O.2d 420, 187 N.E.2d 45, paragraph two of the syllabus. "Reckless" conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that this risk is greater than that necessary to make the conduct negligent. *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104–105, 559 N.E.2d 705, 707–708, citing 2 Restatement of the Law 2d, Torts (1965) 587, Section 500.

■ As discussed in the previous section, appellees had probable cause to arrest Piro. While Piro claims that he had a privilege to use the badge, handcuffs, and hunting gun to arrest the Andersons, we found otherwise. Piro also argues that the prosecutor was never informed that Piro had reason to fear for his safety when he confronted the Andersons or that he estimated the value of his tree stand at an amount that would have made the theft of the stand a felony. Assuming these facts to be true, Piro still would not have established an affirmative defense to the charge of impersonating a peace officer. We cannot conclude that Davidson and Endres acted maliciously, recklessly, or with bad faith by allegedly withholding these facts from the prosecutor.

■ Similarly, the alleged failure of Davidson and Endres to fully investigate the case does not indicate malice, recklessness, or bad faith. Piro points to much alleged information "that would have incriminated the Andersons and exonerated Piro," but was not adequately developed by Davidson and Endres. This information concerned Gary Anderson's admission to stealing Piro's tree stand. Even if true, Piro's arrest still would have been justified. He was not legally permitted to impersonate a peace officer simply because his property had been stolen.

■ Piro also claims that Davidson and Endres failed to investigate incidents involving Pam and Terry Siegenthaler ("the Siegenthalers"), who are neighbors of the Andersons. The Siegenthalers averred that they had been threatened by the Andersons. The threats arose because the Siegenthalers planned to tell the

police about allegedly perjured grand jury testimony given by the Andersons. When they told Davidson about the threats, however, Davidson refused to file a report. The Siegenthalers also described an incident in which Gary Anderson scared their legally blind son. These incidents do not show that Endres or Davidson acted maliciously, recklessly, or with bad faith toward Piro.

■■■ Based on the foregoing, the trial court did not err in finding that Davidson was immune from liability. As for Endres, Piro made additional allegations that, if true, would show that Endres acted maliciously, in bad faith, or in a wanton or reckless manner. In his deposition and affidavit, Piro stated that Endres called him a "guinea," a "wop," and a "mobster," and told him that he would no longer "have to worry about being an attorney" because of the criminal charges. Such statements are sufficient probative evidence of malice under R.C. 2744.03(A)(6)(b). See Strongsville v. Terry Dev. Co. (May 27, 1993), Cuyahoga App. Nos. 62057, 62061 and 62120, unreported, 1993 WL 180197, at 2. Endres has denied making these remarks. In reviewing a motion for summary judgment, however, we must construe the facts and all inferences therefrom in the light most favorable to the nonmovant. See Turner v. Turner (1993), 67 Ohio St.3d 337, 341, 617 N.E.2d 1123, 1126–1127. Accordingly, the trial court erred in finding that Endres' actions were protected under political subdivision immunity.

## C. Immunity of Fuchs

■■■ Piro argues that Fuchs, the captain of the township police department, was not entitled to immunity. The Siegenthalers allegedly told Fuchs that the Andersons stole Piro's tree stand, yet Fuchs did not act on this information. Piro also claims that Fuchs ratified the allegedly malicious conduct of his officers. Assuming Piro's version of the events to be true, we still cannot find that the trial court erred in concluding that Fuchs was entitled to immunity. A failure to investigate information about the Andersons' theft does not equate to malice or bad faith toward Piro. The Andersons' theft of the stand and Piro's impersonation of a peace officer are separate issues. As for his ratification claim, Piro has provided no authority supporting his argument that an employee's political subdivision immunity may be abrogated by ratification of a subordinate employee's acts. The trial court did not err in finding that Fuchs was protected by political subdivision immunity.

D. Immunity of Franklin Township and the Franklin Township Police Department

R.C. 2744.02(A)(1) grants a political subdivision immunity from tort liability for acts of the subdivision or its employees in connection with a governmental or proprietary function. R.C. 2744.02(B)(1) through (5) list exceptions to the rule. Piro cites R.C. 2744.02(B)(5), which removes the political subdivision's immunity

"when liability is expressly imposed upon the political subdivision by a section of the Revised Code." Piro argues that R.C. 2744.07(A)(2) expressly imposes liability upon political subdivisions and, therefore, qualifies as an exception under R.C. 2744.02(B)(5).

We reject Piro's argument. R.C. 2744.07(A)(2) states:

"[A] political subdivision shall indemnify and hold harmless an employee in the amount of any judgment, other than a judgment for punitive or exemplary damages, that is obtained against the employee * * * and that is for damages for injury, death, or loss to persons or property caused by an act or omission in connection with a governmental or proprietary function, if at the time of the act or omission the employee was acting in good faith and within the scope of his employment or official responsibilities."

■ This section does not remove the political subdivision's immunity in any way. Instead, it requires the political subdivision to indemnify its employee if the employee is liable for a good faith act related to a governmental or proprietary function. Requiring the subdivision to indemnify its employee is entirely different from imposing direct liability on the subdivision. Contrary to Piro's argument, R.C. 2744.07(A)(2) does not expressly impose liability upon a political subdivision. We, therefore, find that the trial court did not err in finding that Franklin Township and the Franklin Township Police Department were immune from liability.

Piro's third assignment of error is sustained in part and overruled in part.

## Assignment of Error I

"The trial court erred in granting summary judgment to Appellees on grounds that a Supreme Court ruling on Appellant's suitability to take the bar examination conclusively established that the conduct of the Franklin Township police officers was not the proximate cause of Appellant's injuries."

Piro asserts that the trial court erred by using the Supreme Court of Ohio's opinion in *In re Applications of Piro* (1993), 66 Ohio St.3d 400, 613 N.E.2d 201, as evidence in the case *sub judice*. He claims that the trial court used *Piro* as evidence, not law, and that such a use is prohibited by Civ.R. 56(C), which lists the evidentiary materials that may be used in supporting or opposing a summary judgment motion.

■ We find that any error by the trial court did not prejudice Piro. The relevant part of the Supreme Court's opinion in *Piro* is the following sentence:

"Having reviewed the record in this proceeding, we agree with the board that Piro has not established by clear and convincing evidence the necessary character

and fitness for admission to the practice of law in Ohio." *Piro,* 66 Ohio St.3d at 402, 613 N.E.2d at 203.

The court did not undertake its own findings; it simply concurred in the conclusion of the Board of Commissioners of Character and Fitness. A copy of the Board's report was attached to Piro's response to appellees' motion for summary judgment. In his affidavit, which was also attached to his response, Piro averred that the attached copy of the Board's report was true and accurate. Piro cannot claim that he was prejudiced by the trial court's reliance on a document where that document was substantively identical to material he submitted to the trial court.

Piro's first assignment of error is overruled.

### Assignment of Error IV

"The trial court erred in granting summary judgment to Appellees on grounds that Appellant cannot demonstrate all the essential elements of his claims."

The trial court found that Piro could not prove the prima facie elements of any of his claims. We address each claim in turn.

### A. Intentional Infliction of Emotional Distress

■ In order to prove a claim for intentional infliction of emotional distress, the plaintiff must prove that (1) the defendant either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional harm to the plaintiff; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental distress suffered by the plaintiff was serious. *Davis v. Billow Co. Falls Chapel* (1991), 81 Ohio App.3d 203, 206, 610 N.E.2d 1024, 1026. In this context, "extreme and outrageous conduct" has been described as follows:

"It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 374–375, 6 OBR 421, 426, 453 N.E.2d 666, 671, quoting 1 Restatement of the Law 2d, Torts (1965) 73, Section 46, Comment *d.*

■ We find that the trial court correctly granted summary judgment for appellees on this claim. Piro cannot prove that appellees' conduct was extreme

and outrageous as a matter of law. Appellees' arrest of Piro, which was supported by probable cause, did not "go beyond all possible bounds of decency," nor was it "utterly intolerable in a civilized community." Quite to the contrary, arrests of suspected criminals are necessary in keeping the community civilized. The trial court did not err in granting summary judgment for appellees on this claim.

## B. Negligent Infliction of Emotional Distress

Piro cannot maintain his negligent infliction claim because of political subdivision immunity. In our previous discussion of political subdivision immunity, we found that a question of fact existed as to whether Endres acted maliciously, recklessly, or in bad faith. See R.C. 2744.03(A)(6)(b). A finding that Piro could maintain a tort claim grounded in negligence is inconsistent with R.C. 2744.03(A)(6)(b), which requires a higher level of culpability in order to remove the immunity of political subdivision employees. Because Piro's claim is precluded by immunity, we need not discuss whether his allegations establish a claim of negligent infliction of emotional distress.

## C. Defamation

Defamation requires a showing of four elements: a false and defamatory statement concerning another; unprivileged publication to a third party; fault amounting to at least negligence by the publisher; and either actionability of the statement irrespective of a special harm or the existence of special harm caused by the publication. *Akron–Canton Waste Oil, Inc. v. Safety–Kleen Oil Serv., Inc.* (1992), 81 Ohio App.3d 591, 601, 611 N.E.2d 955, 962, quoting 3 Restatement of the Law 2d, Torts (1977) 155, Section 558. A defamatory statement is actionable per se if it reflects perniciously on a person's character. *Tohline v. Cent. Trust Co.* (1988), 48 Ohio App.3d 280, 284, 549 N.E.2d 1223, 1228–1229.

Piro argues that he was defamed in two separate incidents. The first incident occurred when Endres spoke to the Andersons at the police station. Endres allegedly told the Andersons that Piro was a "violent and insane" "career criminal" who was "one can short of a six-pack" and had "ties to organized crime." Tom Anderson repeated these statements to Terry Siegenthaler, who reproduced the statements in his affidavit. Based on this affidavit, we find that the trial court erred in concluding that Piro could not prove, as a matter of law, the elements of defamation. Endres' statements, if actually made, reflected perniciously on Piro's character. We cannot say, as a matter of law, that the other prima facie elements have not been met.

■ The second instance of alleged defamation concerns Davidson's contact with the University of Akron police department, which was ostensibly for the purpose of investigating Piro's background. Piro argues that he was defamed when information was conveyed by the university police department to the law school. We fail to see how Piro was defamed by Davidson, as Piro has not pointed to any allegedly defamatory statement made by Davidson during his contact with the university police. In his brief, Piro states that Davidson "must have realized that information relative to any criminal charges against a law student would be passed along to the law school." This statement implies that Davidson told the university police of the criminal charges filed against Piro. Assuming that this implication is true, Piro still cannot prove any set of facts showing that he was defamed by Davidson. Because criminal charges had been filed against Piro, and because truth is a complete defense to a defamation claim, see R.C. 2739.02, Davidson's statement was not defamatory. The trial court, therefore, did not err in concluding that Piro could not establish the elements of a defamation claim against Davidson.

## D. Invasion of Privacy

■ The tort of invasion of privacy includes four distinct causes of action: intrusion into the plaintiff's seclusion, solitude, or private affairs; public disclosure of embarrassing private facts about the plaintiff; publicity that places the plaintiff in a false light; and appropriation of the plaintiff's name or likeness for the defendant's advantage. *Killilea v. Sears, Roebuck & Co.* (1985), 27 Ohio App.3d 163, 166, 27 OBR 196, 198–199, 499 N.E.2d 1291, 1294, citing Restatement of the Law 2d, Torts (1977) 376, Section 652A. Piro asserts that appellees arrested him without probable cause. By doing so, they allegedly intruded into his private affairs and produced publicity that placed him in a false light. As noted previously, however, appellees had probable cause to arrest Piro. Because appellees had probable cause, their arrest constituted neither a wrongful intrusion into Piro's private affairs nor publicity that placed him in a false light. The trial court, therefore, did not err in granting summary judgment to appellees on Piro's invasion of privacy claim.

## E. Malicious Prosecution

■ To establish a prima facie case of malicious prosecution, the plaintiff must show, among other elements, a lack of probable cause supporting the prosecution. See *Trussell v. Gen. Motors Corp.* (1990), 53 Ohio St.3d 142, 559 N.E.2d 732, syllabus. Again, Piro's claim fails as a matter of law because appellees had probable cause to arrest him.

### F. Abuse of Process

Piro's final claim is for abuse of process. That tort requires Piro to prove three elements: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.* (1994), 68 Ohio St.3d 294, 626 N.E.2d 115, paragraph one of the syllabus.

Piro claims that appellees' ulterior motive in bringing the charges against him was to destroy his career as an attorney. In his deposition, Piro testified that Endres told him that he would not have to worry about being an attorney. Without deciding whether appellees attempted to sabotage Piro's career, we find that Piro cannot prove any set of facts showing that direct damage resulted from appellees' actions. Piro caused the damage to his career by falsifying his law school application and by engaging in the conduct that led to his arrest by appellees. The arrest and charges against Piro would have been warranted regardless of appellees' motive.

Piro argues that the trial court applied an improper standard in granting summary judgment on the abuse of process claim. The court cited *Clermont Environmental Reclamation Co. v. Hancock* (1984), 16 Ohio App.3d 9, 11, 16 OBR 9, 11–12, 474 N.E.2d 357, 361, which states that the prima facie elements of abuse of process include a showing of "a further act in the use of process not proper in the regular conduct of the proceeding." The court stated that Piro failed to offer evidence of any further act. Piro argues that a "further act" need not be shown pursuant to the Supreme Court of Ohio's opinion in *Yaklevich*. We find that any error by the trial court was harmless. Piro cannot, as a matter of law, prove the elements required by *Yaklevich*, the Supreme Court of Ohio's most recent pronouncement on the tort of abuse of process.

Piro's fourth assignment of error is sustained in part and overruled in part.

### Assignment of Error II

"The trial court erred in granting summary judgment to Appellees on grounds that Appellant can prove no damages."

Piro raises two separate arguments in this assignment of error. The first argument concerns Piro's treatment for emotional injuries. Piro was in an industrial accident several years ago. The state's workers' compensation fund has been paying for Piro's psychiatric treatments. Appellees argued, and the trial court agreed, that the state's payment for Piro's psychiatric treatments precluded Piro's claims for emotional damage. We find that the trial court erred.

We simply cannot see how Piro's treatments for emotional trauma arising from the accident can prove that he did not suffer any emotional damage from his arrest and the criminal charges. The issue of whether workers' compensation funds should be used to pay for a nonindustrial injury is entirely separate from the issue of whether Piro suffered emotional injury. We find that the trial court erred in granting summary judgment on this claim.

Piro's second argument concerns the colorability of his damages. Appellees argued that Piro failed to produce sufficient evidence of damages as a result of his inability to sit for the July 1992 bar examination. Piro argues that the trial court erred in granting summary judgment on this basis because his earning capacity was impaired, even if he cannot show a specific loss. We need not decide this issue because we previously determined that Piro caused the damage to his career. Any impairment of Piro's earning capacity was proximately caused by his actions, not appellees'. Accordingly, any error by the trial court in concluding that Piro's damages were too speculative was harmless.

Piro's second assignment of error is sustained in part and overruled in part.

## Conclusion

The trial court correctly found that Davidson, Fuchs, Franklin Township, and the Franklin Township Police Department were protected by political subdivision immunity. The court erred in finding that Endres was similarly protected as a matter of law.

The court correctly found that Piro, as a matter of law, could not prove the elements of his claims of intentional infliction of emotional distress, negligent infliction of emotional distress, invasion of privacy, malicious prosecution, and abuse of process. The court also correctly found that Piro could not prove the elements of his defamation claim, to the extent that this claim concerns Davidson's actions. The court erred in granting summary judgment on the issue of defamation as it relates to Endres' remarks.

As for causation, the damage to Piro's legal career was not proximately caused by appellees' actions. The Board's report showed that Piro's application to take the bar examination was refused for two reasons: (1) his failure to disclose prior arrests on his law school application and (2) appellees' arrest of Piro during his final year of law school. Because appellees' arrest was supported by probable cause, appellees did not proximately cause Piro's failure to sit for the bar examination and the consequent delay of his career as an attorney.

Piro's sole remaining claim, therefore, is his defamation claim against Endres. Should he prevail on this claim on remand, he will not be able to recover any damages resulting from his inability to take the July 1992 bar examination and to begin his career as an attorney at that time.

The judgment of the trial court is affirmed in part and reversed in part. The cause is remanded to that court for proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

QUILLIN and DICKINSON, JJ., concur.