**Lonnie PROFFITT, Plaintiff,**

v.

**INTERNATIONAL PAPER COMPANY, Defendant.**

No. C–1–94–219.

United States District Court, S.D. Ohio, Western Division.

Dec. 11, 1996.

Thomas W. Condit, Condit & Dressing, Cincinnati, OH, Scott T. Greenwood, Greenwood & Hudson, Cincinnati, OH, James Richard Rimedio, Cincinnati, OH, for Lonnie Proffitt.

Lonnie Proffitt, Cincinnati, OH, pro se.

Robert D. Hudson, Greenebaum Doll & McDonald, Covington, KY, for International Paper Company.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant's motion for summary judgment (doc. 10), Plaintiff's response (doc. 25), and Defendant's reply (doc. 27).

## BACKGROUND

Plaintiff Lonnie Proffitt brought this diversity action, alleging that Defendant International Paper Company ("International Paper") invaded his privacy. Mr. Proffitt was an employee of International Paper and a member of the collective bargaining unit, Local 1968, United Paperworkers International Union, AFL–CIO ("the union"). A provision of the collective bargaining agreement ("CBA") between the union and International Paper stated that Mr. Proffitt could be discharged only for "just cause."

In early 1990, International Paper decided to conduct employee health and safety medical reviews. To that end, International Paper required its employees to complete medical history questionnaires. The medical evaluation became a term and condition of continued employment. In fact, the union supported the medical examinations as a means of promoting work-place safety.

Mr. Proffitt refused to answer some of the medical history questions, including but not limited to whether he had experienced a heart attack, had filed workers' compensation claims, had been denied life insurance, or had been rejected for military service. He filed a grievance, challenging the medical evaluation on the grounds that it invaded his privacy. International Paper gave Mr. Proffitt a revised questionnaire, asking questions relating to the topics of allergies, colds and shortness of breath, but Mr. Proffitt repeatedly refused to answer any of the questions.

In April of 1990, pursuant to the CBA, International Paper terminated Mr. Proffitt for insubordination. The union did not process Mr. Proffitt's grievance to arbitration.

Mr. Proffitt filed this action in March of 1994. In his Complaint, Mr. Proffitt alleges that International Paper's conduct violated his rights under the Constitution of the State of Ohio and invaded his privacy.

International Paper moved for summary judgment, arguing that Mr. Proffitt has attempted to recast his § 301 claim, which is time-barred, and that his claims are substantively identical to those set forth in the 1990 grievance which the union refused to submit to arbitration.

## STANDARD OF REVIEW

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. at 2551–52; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *see Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Guarino,* 980 F.2d at 405. Although the burden might not require the

non-moving party to "designate" facts by citing page numbers, " 'the designated portions must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.' " *Guarino,* 980 F.2d at 405 (quoting *Inter–Royal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990).

## DISCUSSION

■ Section 301 of the Labor Management Relations Act ("LMRA"), which governs contracts between employers and labor unions, preempts state law claims arising under it. *Textile Workers Union of America v. Lincoln Mills of Ala.,* 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957); *In re General Motors Corp.,* 3 F.3d 980, 983 (6th Cir.1993); *see* 29 U.S.C. 185(a) [1]. The Supreme Court has interpreted § 301 expansively so as to cover suits brought by employees. *In re Glass, Molders, Pottery, Plastics & Allied Workers International Union, Local No. 173,* 983 F.2d 725, 728 (6th Cir.1993) (citing *Smith v. Evening News Ass'n,* 371 U.S. 195, 200–201, 83 S.Ct. 267, 270–71, 9 L.Ed.2d 246 (1962)). Section 301 preempts state law claims based upon rights created by the CBA as well as state law claims the resolution of which depends on the meaning of the CBA. *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881–82, 100 L.Ed.2d 410 (1988); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 394, 107 S.Ct. 2425, 2430–31, 96 L.Ed.2d 318 (1987) (holding that the LMRA preempts state law claims that are "substantially de-

pendent" upon an interpretation of the CBA). Section 301 preemption applies where the state law claim "arise[s] out of activity that allegedly took place not only within the workplace but also in the context of the grievance procedures mandated by the collective bargaining agreement." *In re General Motors Corp.,* 3 F.3d at 984.

■ The Sixth Circuit has developed a two-step approach for determining whether § 301 preemption applies.

First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms. Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law.

*DeCoe v. General Motors Corp.,* 32 F.3d 212, 216 (6th Cir.1994) (internal citations omitted). There is no preemption of a claim where the right arises out of state law and the claim does not require contract interpretation. *Id.* Conversely, where the right does not arise out of state law or the claim requires interpretation of the CBA, then preemption is warranted. *Id.*

■ With respect to the first inquiry, the court looks to the essence of the plaintiff's claim. *DeCoe,* 32 F.3d at 216. If the plaintiff can prove all of the elements of his claim without having to interpret the contract, then his claim is independent of the labor agreement. *Id.* (citing *Dougherty v. Parsec, Inc.,* 872 F.2d 766, 770 (6th Cir. 1989)). A tangential relationship to the CBA does not make a state law claim dependent on the labor contract. *Id.* (citing *Fox v. Parker Hannifin Corp.,* 914 F.2d 795, 800 (6th Cir.1990)). In other words, the state claim must be " 'inextricably intertwined with consideration of the terms of the labor contract.' " *Jones v. General Motors Corp.,* 939 F.2d 380, 382 (6th Cir.1991) (quoting *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985)).

---

**1.** Section 301 provides, "[s]uits for violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the citizenship of the parties." 29 U.S.C. § 185(a).

In order to determine whether proof of Mr. Proffitt's invasion of privacy claim requires interpretation of the CBA, we must look to the elements of invasion of privacy under Ohio law. Under Ohio law, to state a claim of invasion of privacy[2], the plaintiff must show that a wrongful intrusion into "one's private activities [occurred] in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Housh v. Peth,* 165 Ohio St. 35, 35, 133 N.E.2d 340 (1956) (syllabus). In other words, " '[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person.' " *Haller v. Phillips,* 69 Ohio App.3d 574, 578, 591 N.E.2d 305 (1990) (quoting Restatement (Second) of Torts § 652B, at 378–79 (1977)).

International Paper argues that Mr. Proffitt's claims directly relate to and are substantially dependent upon the CBA in many respects. International Paper and the union negotiated a clause in the CBA whereby International Paper reserved the "right to establish and require employees to observe company rules and regulations...." CBA, Article 2(b). International Paper argues that it exercised this right by establishing compliance with the medical questionnaire as a condition of employment and by publishing a work rule on insubordination, which stated that failure or refusal to comply with the instructions will result in immediate discharge. International Paper terminated Mr. Proffitt for "just cause"—failure to comply with term of employment—as required by the CBA. CBA, Article 13.2 and 2(b). Further, stating a similar claim that the questionnaire invaded his privacy, Mr. Proffitt filed a grievance pursuant to a clause in the CBA, which permits employees to grieve any violation of the terms of the CBA, or their interpretation or application.

We agree with International Paper; resolution of Mr. Proffitt's privacy claims is substantially dependent upon an interpretation of the terms of the CBA, and thus the claims are preempted by § 301 of the LMRA. Resolution of the privacy claims requires the Court to determine whether the intrusion—requiring compliance with the medical evaluation program as a condition of employment—would be highly offensive to a reasonable person. A person's expectation of privacy in the workplace is informed by the rules and regulations under which he or she works, which are set forth in the CBA. Moreover, International Paper established the medical evaluation program to which Mr. Proffitt objects, acting pursuant to their authority under the CBA. Thus, resolution of Mr. Proffitt's privacy claims requires consideration of the terms of the CBA. Therefore, Mr. Proffitt's state law claims are preempted by § 301. *See General Motors,* 3 F.3d at 985 (holding an employee's claim of invasion of privacy is preempted by § 301 where the claim involves construing the employment relationship of a workplace governed by a CBA); *accord Stikes v. Chevron USA, Inc.,* 914 F.2d 1265, 1269–70 (9th Cir.1990) (employee's claim that employer's program of random searches of persons and property violated his right of privacy was preempted by § 301 because the employee's expectation of privacy in the workplace could not be ascertained without considering the conditions of his employment as enumerated in the CBA); *Jackson v. Liquid Carbonic Corp.,* 863 F.2d 111, 118–19 (1st Cir.1988) (holding employee's claims that employer's drug testing program violated his right of privacy were preempted by § 301); *Kirby v. Allegheny Beverage Corp.,* 811 F.2d 253, 255–56 (4th Cir.1987) (affirming district court's decision to dismiss invasion of privacy claim as preempted by § 301 where claim required a determination whether the CBA permitted the search and whether the employer's actions were reasonable in light of

---

**2.** There are four branches of the tort of invasion of privacy: appropriation of one's name or likeness, publicity that places one in a false public light, unreasonable publicity of one's private life, and wrongful intrusion into private activities. *Piro v. Franklin Twp.,* 102 Ohio App.3d 130, 144,

656 N.E.2d 1035 (1995). We agree with International Paper that wrongful intrusion is the only branch of the tort implicated by this case. Mr. Proffitt did not dispute this fact in his response to the motion for summary judgment. Pl.'s Mem. in Opp'n at p. 4.

the CBA); *Bailey v. Beaver Precision Prods., Inc.,* 678 F.Supp. 684, 687 (E.D.Mich. 1988) (where terms and conditions of employment are governed exclusively by CBA, evaluation of invasion of privacy claim "would require a decision as to whether the drug testing was permissible and reasonable in light of the [CBA]").

Further, we find Mr. Proffitt's arguments against preemption unpersuasive. First, Mr. Proffitt attempts to distinguish two cases cited by International Paper, *In re General Motors, supra,* and *Hamrick v. Goodyear Aerospace Corp.,* 37 Ohio App.3d 124, 524 N.E.2d 529 (1987). In both cases, the courts found that the invasion of privacy claims were directly dependent upon a specific term of the CBA and thus were preempted by § 301. *In re General Motors,* 3 F.3d at 984 (holding that Employee Assistance Program constituted a contract under § 301 and the invasion of privacy claim arising out of that contract was preempted); *Hamrick,* 37 Ohio App.3d at 125, 524 N.E.2d 529 (holding that whether defendant had a right to search an employee's purse requires interpretation of the CBA). Whereas, here, Mr. Proffitt argues, there is no "such nexus" to the CBA. For the reasons stated above, we disagree and find that the claims are "inextricably intertwined with consideration of the terms" of the CBA.

Additionally, Mr. Proffitt argues that where, as here, the defendant's conduct is so outrageous or abusive, the doctrine of federal preemption does not bar state tort actions. For this proposition, Mr. Proffitt cites *Farmer v. United Brotherhood of Carpenters & Joiners of America, Local 25,* 430 U.S. 290, 302, 97 S.Ct. 1056, 1064, 51 L.Ed.2d 338 (1977), in which the Supreme Court held that the National Labor Relations Act did not preempt an action for intentional infliction of emotional distress where the plaintiff claimed that the union had acted outrageously in discriminating against him. However, *Farmer* is distinguishable because it concerns the NLRA preemption test under *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), which is inapplicable to § 301 preemption. *DeCoe,* 32 F.3d at 219; *accord,*

*Hyles v. Mensing,* 849 F.2d 1213, 1217 (9th Cir.1988) (holding that cases such as *Farmer* do no apply to § 301 LMRA preemption).

## CONCLUSION

Therefore, we find that Mr. Proffitt's privacy claims are preempted by § 301 of the LMRA. Accordingly, we GRANT Defendant's motion for summary judgment on this ground and DISMISS the case.

SO ORDERED.