The Montgomery County Court of Common Pleas overruled Officers Gerald Gustin and Jeffrey Colvin's motion for summary judgment as it pertained to state law claims brought against them in their individual capacity by Judy and George MacNamara. Officers Gustin and Colvin now appeal.
On December 18, 1997, the MacNamaras filed a complaint against Officers Gustin and Colvin, in their individual and official capacities, and against the Huber Heights Police Department, for incidents surrounding the June 6, 1997 arrest of Judy MacNamara. The MacNamaras alleged that the officers had physically and verbally assaulted Judy MacNamara, in violation of state law and Section 1983, Title 42, U.S. Code, and had caused George MacNamara to suffer lost wages while transporting his wife to medical appointments following the arrest. The MacNamaras further alleged that the police departments had been "grossly negligent in its training of its officers."
Officers Gustin and Colvin filed an answer denying the MacNamaras' allegations of wrongdoing and claiming immunity from liability. On August 24, 1998, Officers Gustin and Colvin filed a motion for summary judgment in which they claimed immunity from liability under R.C. 2744.03(A)(6), and they attached affidavits describing the facts surrounding the arrest of Judy MacNamara. The MacNamaras filed a memorandum opposing summary judgment on September 17, 1998, contending that Officers Gustin and Colvin had acted "with a malicious purpose" and were thus not entitled to immunity pursuant to R.C. 2744.03(A)(6)(b). They submitted affidavits describing their version of the events giving rise to the lawsuit. In a reply memorandum filed on November 12, 1998, Officers Gustin and Colvin insisted that the version of the incident that Judy MacNamara described at her deposition "objectively establishes that only reasonable and necessary force was used."
On November 24, 1998, the trial court granted summary judgment to the police department and to Officers Gustin and Colvin in their official capacities on the MacNamaras' state law claims and awarded summary judgment to Officers Gustin and Colvin on the claim brought pursuant to Section 1983, Title 42, U.S.Code. On the MacNamaras' state law claims against Officers Gustin and Colvin in their individual capacities, the trial court denied summary judgment based on its determination that reasonable minds could differ as to whether the officers were entitled to immunity under R.C. 2744.03.
In an appeal brought pursuant to R.C. 2744.02(C), Officers Gustin and Colvin and the police department asserted two assignments of error. The police department's involvement in the appeal was restricted to the second assignment of error, which the parties have since resolved.[1] Thus, we confine our review to matters raised in the first assignment of error.
 I. THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR BY DENYING APPELLANTS', GUSTIN AND COLVIN, MOTION FOR SUMMARY JUDGMENT IN THEIR INDIVIDUAL CAPACITIES AS TO APPELLEES' CLAIMS AGAINST THEM BASED UPON STATE LAW.
Officers Gustin and Colvin contend that the trial court should have awarded summary judgment in their favor on the MacNamaras' state law claims against them in their individual capacities.
Pursuant to Civ.R. 56(C), summary judgment may be granted only if the trial court determines that:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. For the moving party to satisfy its initial burden of showing the absence of any genuine issue of material fact, that party cannot simply make conclusory allegations that the nonmoving party has no evidence supporting its case. Dresher v. Burt (1996), 75 Ohio St.3d 280,292-293. Rather, the moving party must "specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." Id. at 293. When the moving party satisfies its burden, the nonmoving party may avoid summary judgment by setting forth "specific facts showing that there is a genuine issue for trial." Id. at 293; Civ.R. 56(E). We review the trial court's decision to grant or deny summary judgment de novo. Chapman v. Adia Services, Inc.
(1997), 116 Ohio App.3d 534, 540.
In the affidavits submitted by Officers Gustin and Colvin in support of their motion for summary judgment, they explained that, on June 6, 1997, at approximately 10:30 p.m., they had been dispatched to a Kroger store where two intoxicated individuals had been denied the purchase of alcohol and had then driven away from the store. The officers stated that store employees had provided a description of the individuals and the vehicle. Officer Gustin's affidavit contained the following statements:
 5. Upon further investigation we found the vehicle matching this description had stopped at the corner of Rosebury and Corsica with a female in the driver seat matching the description of the female given to us by the dispatcher. The engine was running. Officer Colvin advised our dispatcher that this female appeared to be talking to herself;
 6. We then pulled up to the scene and Officer Colvin made first contact with this female who was later identified as Judy L. MacNamara, the Plaintiff in this action. As I approached Judy MacNamara, I heard her yelling something at Officer Colvin. Officer Colvin then requested that she step outside from the vehicle, and as she did so she dropped her purse. She began yelling as she picked up everything to put back into it;
 7. Officer Colvin requested that Judy MacNamara step to the curb so that we could perform a field sobriety test. She continued to yell. As I moved closer to her I could smell a strong odor of alcoholic beverage about her person. She was also staggering in her gait, her speech was thick tongued and she was very excited. She was complaining that she and her husband had been arguing and that he had walked away from her;
 8. As Officer Colvin conducted the field sobriety test, Judy MacNamara was very difficult in that she refused to listen to the instructions. She continued to yell comments such as we should be looking for real criminals instead of harassing an old woman;
 9. Judy MacNamara was unable to successfully complete this field sobriety test so we advised her that she was under arrest for operating motor vehicle while under the influence of alcohol. She stated something to the effect that she was not under arrest. Initially she would not put her arms behind her back when she was told to do so, but then she complied;
 10. I was then able to put her left hand behind her back without resistance, but when I put the handcuff on she began to struggle and she pulled away from me. She also became very angry and began calling us foul names * * *. At this time Officer Colvin was able to get her right arm behind her and we successfully handcuffed her without any further physical resistance from her.
 11. I was able to double lock the handcuffs which allowed me to get an index finger between the handcuffs and Judy MacNamara's wrist;
 12. Officer Colvin and I then placed Judy MacNamara in my cruiser as she continued to scream obscenities at us. After placing her in my vehicle[,] Officer Colvin requested a tow truck and I then transported her to the police station. She yelled and screamed the entire way;
 13. Once Judy MacNamara and I arrived at the police station, I requested a dispatcher for a "pat down." After the pat down, I read Judy MacNamara a BMV form #2255. At that time she stated that she was not going to take any test. After advising her of the legal consequences for failure to take the test, I marked the form as a "refusal." At that time she stated "fuck you" and then she refused to answer any of the questions or cooperate in any other way. She continued to sit there yelling and screaming at me. Then I advised her that I was putting her under an ALS suspension for one year;
 14. As the police dispatcher and I were conducting an inventory of the contents of Judy MacNamara's purse and wallet, I located a bag that contained a plant substance that smelled like marijuana. Judy MacNamara immediately yelled that she was an anorexic, that she needed to smoke pot to eat and that she was going to continue to smoke pot;
 15. I then placed Judy MacNamara into a cell until she calmed down. After doing so she was allowed to make a phone call. She called her husband who responded with bond;
 16. As a result of the above, Judy MacNamara was cited for driving under the influence of alcohol and/or drugs of abuse, possession of marijuana under 100 grams and parking a motor vehicle more than 12" from the curb;
 17. Judy MacNamara was * * * subsequently convicted of driving under the influence of alcohol * * *.
Officer Colvin's affidavit contained a virtually identical description of the events occurring at the scene. He added that, when Judy MacNamara had been advised that she was under arrest, she had become "verbally abusive" to them but had "initially placed her hands behind her back." He stated that he had placed his hand on Judy MacNamara's right forearm so that Officer Gustin could handcuff her.
In their memorandum opposing summary judgment, the MacNamaras asserted that Officers Gustin and Colvin could not take advantage of the immunity offered to political subdivision employees under R.C. 2744.03 because they had acted with a malicious purpose by physically and verbally abusing Judy MacNamara and by verbally abusing George MacNamara. Judy MacNamara made the following statements in her affidavit:
 4. In effectuating the arrest, Officer Colvin used excessive force by violently grabbing my right forearm when putting on the handcuffs.
 5. In effectuating the arrest, Officer Gustin used excessive force by placing the handcuffs on me too tightly.
 6. When I complained about the handcuffs being too tight, Officer Gustin made them tighter.
 7. Because of the excessive force used of Officers Colvin and Gustin, I had bruises on my wrists and forearms.
 8. In effectuating the arrest, Officer Gustin kept pushing me while I was handcuffed and injured [my] back and shoulder.
 9. When I arrived at the Huber Heights Police Station, Officer Gustin kept threatening me and verbally abusing me.
 10. Officer Gustin kept yelling at me, "I do [not] like you people."
 11. As a result of Officer Gustin's treatment, I became so scared that I defecated on myself.
George MacNamara swore in his affidavit that, when he had arrived at the police station, "Officer Gustin began verbally abusing and threatening [him] and [his] Wife" and kept yelling, "I do not like you people." He also stated that, after his wife had been released, he noticed that she had been "physically abused."
At Judy MacNamara's deposition, she testified that, after she had taken the field sobriety test, Officer Colvin had placed her arms behind her back and both of her wrists in the handcuffs. She stated that the handcuffing procedure had taken a very short time, such that "[it] was just click, click" and that, when she had asked Officer Colvin to loosen the handcuffs because they were hurting her wrists and because her shoulder had popped, "he clicked [the handcuffs] twice" to tighten them, causing her wrists to bleed and to scar. Judy MacNamara further stated that Officer Gustin had not touched her until she was handcuffed, at which time he had grabbed her by the arms, had led her to the police cruiser, and had shoved her into the back seat, causing her to hit her shoulder. She claimed that Officer Gustin had refused her request to telephone her physician and had told her to keep her mouth shut. Judy MacNamara denied that she had cursed at the officers at the scene, that she had resisted the handcuffing procedure, and that she had failed the field sobriety test. Judy MacNamara further testified that, upon arriving at the police station, Officer Gustin had removed the handcuffs and had given her "five seconds to take them rings off, or [he'd] get them off" despite her indication that she had arthritis in her knuckles. She stated that she had asked him if he was "threatening to break [her] fingers." According to Judy MacNamara, Officer Gustin grabbed her arms, led her into a room, "put [her] in solitary," and told her to get used to it because she was "going to be going downtown" before anyone could "come and bail [her] out." She testified that she had refused to take a blood-alcohol level test because, although she had expressed her fear of an impending heart attack, Officer Gustin had not allowed her to telephone her physician.
In deciding not to award summary judgment to Officers Gustin and Colvin on the state law claims against them in their individual capacities, the trial court stated:
 Plaintiff claims that in the course of the arrest, Defendants maliciously and wantonly placed the handcuffs on too tight causing her writs to bleed. Additionally, she claims in the process of placing the handcuffs on her wrists, her shoulder "popped," causing injury to her shoulder. Plaintiff also alleges that Defendants "shoved" her in the police cruiser. Defendants argue that they acted completely within their authority during the arrest and did not act maliciously or wantonly. Based on the evidence presented to this Court, reasonable minds could come to more than one conclusion regarding whether the actions of the officers were with malicious purpose, in bad faith, or in a wanton or reckless manner. Therefore, there remains a genuine issue of material fact as to whether Defendants in their individual capacity should be granted immunity.
Pursuant to R.C. 2744.03(A)(6), a police officer "cannot be held personally liable for acts committed while carrying out his or her official duties unless one of the exceptions to immunity is established." Cook v. Cincinnati (1995), 103 Ohio App.3d 80, 90. This presumption of immunity may be rebutted by showing, among other things, that the officer's "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Id. at 90; R.C. 2744.03(A)(6)(b). In Piro v. FranklinTwp. (1995), 102 Ohio App.3d 130, 139, the court set forth the following definitions:
 "Malice" refers to the willful and intentional design to do injury. "Bad faith" connotes a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." "Reckless" conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that this risk is greater than that necessary to make the conduct negligent. (Citations omitted.)
Furthermore, "wanton misconduct" means "the failure to exercise any care whatsoever." Fabrey v. McDonald Police Dept. (1994),70 Ohio St.3d 351, 356.
Construing the evidence in a light most favorable to the MacNamaras, reasonable minds could conclude that Officers Gustin and Colvin were not entitled to immunity pursuant to R.C.2744.03(A)(6)(b). Assuming the truth of Judy MacNamara's assertions that one of the officers had tightened the handcuffs after she had explained that they were too tight, that her shoulder had "popped," and that she had injured her shoulder while being shoved into the police cruiser, reasonable minds could conclude that Officers Gustin and Colvin had acted with a malicious purpose, in bad faith, or in a reckless manner. Furthermore, the MacNamaras' sworn statements that Officer Gustin had expressed that he did not like people like them could be viewed as evidence of the maliciousness of his conduct. See Piro,102 Ohio App.3d at 140 (holding that the plaintiff's allegations that a police officer had "called him a `guinea,' a `wop,' and a `mobster,' and [had] told him that he would no longer `have to worry about being an attorney' because of the criminal charges" were "sufficient probative evidence of malice" under R.C.2744.03(A)(6)(b) such that the officer was not entitled to summary judgment). Thus, the trial court in this case properly concluded that the issue of whether Officers Gustin and Colvin, individually, were immune from liability under R.C. 2744.03(A)(6) was a question for a jury to determine.
The first assignment of error is overruled.
The second assignment of error is overruled as moot.
The judgment of the trial court will be affirmed.
. . . . . . . . . .
GRADY, P.J. and YOUNG, J., concur.
 Copies mailed to: Thomas P. Liptock Craig Denmead Hon. David G. Sunderland
[1] The police department contended that, if the MacNamaras' claim of gross negligence in training officers was based on federal law, then the trial court erred in failing to address and to grant summary judgment on the claim. The MacNamaras indicated in their brief that the claim against the police department was based solely on state law. As such, the police department does not dispute the trial court's award of summary judgment on this claim.