**Jayson S. BOYER, Plaintiff,**

v.

**CITY OF MANSFIELD,
et al., Defendants.**

No. 1:97–CV–704.

United States District Court,
N.D. Ohio,
Eastern Division.

April 21, 1998.

Robert Goldberger, Mansfield, OH, Zach Zunshine, Columbus, OH, for Plaintiff.

Richard P. Goddard, Craig L. Moore, Lola Lee Johnson, Calfee, Halter & Griswold, Cleveland, OH, Patrick A. D'Angelo, Cleveland, OH, for Defendants.

## MEMORANDUM OPINION

GWIN, District Judge.

On January 15, 1998, Plaintiff Jayson Boyer and three of the defendants filed cross-motions for summary judgment in this § 1983 civil rights litigation [Docs. 44, 49]. Boyer seeks judgment against Defendant Mansfield Corrections Officer Dale Young's allegedly excessive use of force against Boyer. Boyer says this force was used during a booking at the city jail. Defendants Young and Sergeant Jan Wendling claim qualified immunity and the city asserts it is entitled to judgment because a patrol officer later convicted of assault was acting outside the scope of his employment when he assaulted the handcuffed plaintiff. For the reasons outlined below, the Court grants judgment to Defendants Young. Wendling, and the city of Mansfield.

### I

After midnight on May 27, 1995, Mansfield police arrested Boyer after receiving a call from a citizen who reported a "man with a gun" at 184 Rowland Avenue. Several officers dispatched to the scene apprehended Boyer and another suspect in a basement closet in a house up the street. Boyer failed to comply with officers' verbal commands and when they thought the plaintiff was going for a gun used pepper spray.[1]

Another defendant who has not moved for summary judgment, Police Officer James Feighenbaum, transported Boyer to the police station for booking. After arriving at the station. Feighenbaum let Boyer wash the pepper spray from his face and escorted Boyer to the booking room.

Boyer remained handcuffed and paced in circles around the room. Boyer spat on the floor while Feighenbaum asked him for basic information, such as name and address.[2] Defendant Young stood in the inner jail and watched part of the booking process through the observation window. According to Young's testimony, based on the plaintiff's appearance, agitated demeanor, and aggressive behavior, he believed that Boyer was intoxicated and on drugs and posed a risk of harm to Feighenbaum.

In a contemporary use of force report. Feighenbaum said that "it appeared that he [Boyer] was going to try to go out the door. At this time I walked over and grabbed him and he spit on me, at which time I grabbed him and threw him to the floor. I then gave him a short kick to the stomach area and then held him on the floor. The suspect tried to spit at me again, at which time I gave him a small punch in the face."

The videotape showed a brief struggle. Feighenbaum pushed Boyer against the wall, knocked him to the floor and kicked him in the ribs. Young did not witness this struggle because he was walking around trying to get someone to unlock the door that led from the inner jail to the booking room. When Young entered the booking room, Feighenbaum and Boyer were on the floor. Young said that it looked like everything was under control. However, when Boyer began to kick his legs

---

1. Boyer subsequently was charged with menacing, resisting arrest, and disorderly conduct. Boyer later pled guilty to resisting arrest.

2. This narrative of events is based in part on the police videotape which recorded most of the events in the booking room and has been made a part of the record.

Young was prompted to restrain the plaintiff's legs. Then Young had his back to Feighenbaum and Boyer. While Young held Boyer's legs, Feighenbaum punched Boyer in the face. Young says he did not see Feighenbaum punch the plaintiff. Then Feighenbaum and Young carried Boyer to a padded cell. In the cell, without cuffs, Feighenbaum said Boyer continued to yell at the officers about having been sprayed with pepper spray and banged his head at the glass portion of the door.

Defendant Wendling was the night watch commander that evening. Wendling heard over the dispatch radio that an officer needed help booking a prisoner. Wendling arrived at the scene when the plaintiff was being placed in the padded cell. According to Wendling, Boyer was bleeding from his nose and mouth and had several bruises on his face and body. Boyer was disorderly, yelling, spitting and beating his head against the door of the cell.

Wendling went to the inner jail area and watched the videotape of Boyer's booking. Then he called the city rescue squad. The rescue squad subsequently checked Boyer's vital signs, pupils, lung sounds, and for broken bones. The rescue squad did not find any serious or significant injuries, but did note that Boyer had scrapes and cuts on his left cheek, left ear and right knee. Additionally, Boyer had a bruise to his right buttock and a black eye, which Boyer said occurred before the incident with Feighenbaum. Boyer never sought any additional medical treatment for the booking incident.

Subsequently, the City of Mansfield convicted Feighenbaum of assault against Boyer.[3]

In his amended complaint, Boyer seeks unspecified compensatory and punitive damages based on four counts: Count I is the excessive force claim under § 1983 against Defendants Feighenbaum and Young; Count II are state law claims against Feighenbaum and Young for assault and battery;[4] Count III is another § 1983 claim against Defendants Wendling and an unidentified defendant never served for violating Boyer's due process right to medical care under the Fifth and Fourteenth Amendments; and Count IV is the § 1983 claim against the city for failure to investigate, supervise, train and discipline its employees for using excessive force and failing to provide medical care to pretrial detainees.

II

Pursuant to Federal Rule of Civil Procedure 56, summary judgment shall be rendered when requested if the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In assessing the merits of the motion, this court shall draw all justifiable inferences from the evidence presented in the record in the light most favorable to the nonmoving party. *Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997). However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Lorain County Bd. of Elections*, 141 F.3d 252, 256 (6th Cir.1998).

---

3. Feighenbaum also was terminated after an investigation. Feighenbaum's termination was submitted to an arbitrator. The arbitrator found for Feighenbaum, ruled that his termination was improper, and ordered that he be reinstated without back pay. Subsequently, Feighenbaum was reinstated and placed again on active duty in February 1996.

4. Count II also includes a claim for failure to intervene and prevent the assault against one defendant, whom both parties agreed to dismiss, and two other defendants never identified or served.

■ Specifically, to survive a motion for summary judgment on an excessive force claim under § 1983, the plaintiff must designate facts showing that the police officer acted unreasonably. *Smith v. Freland,* 954 F.2d 343, 345 (6th Cir.), *cert. denied,* 504 U.S. 915, 112 S.Ct. 1954, 118 L.Ed.2d 557 (1992).

## III

Plaintiff claims that Defendant Young violated plaintiff's constitutional rights by using excessive force against him and by failing to intervene to prevent Feighenbaum from assaulting him.[5] The plaintiff also claims that Defendant Wendling violated plaintiff's due process rights under the Fourteenth Amendment by failing to provide medical care. Young and Wendling assert that they are entitled to summary judgment based on the affirmative defense of qualified immunity.

■ Generally, government officials doing discretionary functions have qualified immunity "shielding them from civil damages liability, as long as they could reasonably have thought their actions to be consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The Supreme Court intends the general rule of qualified immunity to give government officials the ability to reasonably anticipate when their conduct may cause liability for damages. *Id.* at 646, 107 S.Ct. 3034. Where a public official's "duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citation and footnote omitted).

■ Whether or not qualified immunity exists in a given case is a legal question for the court, unless there is a genuine issue of material fact regarding whether the defendant committed acts that would violate a clearly established right. *Monday v. Oullette,* 118 F.3d 1099, 1102 (6th Cir.1997). It is the plaintiff's ultimate burden of proof to establish that the defendants are not entitled to qualified immunity. *Wegener v. City of Covington,* 933 F.2d 390, 392 (6th Cir.1991).

■ In a § 1983 action, the first step in a qualified immunity analysis is to decide whether, based on the applicable law, a constitutional violation has occurred. *Dickerson v. McClellan,* 101 F.3d 1151, 1157 (6th Cir. 1996). In these cross-motions, the alleged constitutional violations are that Defendant Young violated Boyer's Fourth Amendment right to be free from the use of excessive force, and that Defendant Wendling failed to provide medical care for the plaintiff violating his Fourteenth Amendment due process rights.

■ If upon applying these tests, the court determines that no constitutional violation has occurred, then the court need go no further. However, if the court determines there was a constitutional violation, it must go on to the next step of the qualified immunity analysis. *Dickerson,* 101 F.3d at 1158. The court next must determine whether the violation involved "clearly established constitutional rights of which a reasonable person would have known." *Id.* at 1158 (citation omitted). To be "clearly established, the law must define" the right allegedly violated in a particularized and relevant sense rather than on a general level. *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* It is not necessary that the conduct previously was held unlawful, but considering the pre-existing law the unlawfulness of that conduct must be apparent. *Id.*

■ If it is determined that the right is clearly established, then the court must determine whether the plaintiff has alleged sufficient facts, supported by sufficient evidence,

**5.** Both plaintiff and defendants brief whether Defendant Young failed to intervene when another officer allegedly assaulted the plaintiff, but a review of the amended complaint shows the failure to intervene claim was pled against Defendants Hawkins, and Richard and Jane Does and not Young [Doc. 13, at ¶ 26]. As Hawkins and the unidentified "Does" are not included in the group of three defendants (the "separate defendants") who have moved for summary judgment, the court will not address the failure to intervene claim in this opinion.

to indicate what the officer did was "objectively unreasonable in light of the clearly established constitutional rights." *Dickerson*, 101 F.3d at 1158 (citation omitted).

## IV

The test under the Fourth Amendment for the reasonableness of the force used cannot be defined precisely or applied mechanically. *Monday*, 118 F.3d at 1104 (*citing Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). To properly apply the reasonableness test the court must pay careful attention to the facts and circumstances of each particular case. *Id.* Courts consider whether the suspect posed an immediate threat to the safety of the officer or others and whether the suspect was actively resisting arrest or attempting to escape arrest by fleeing. *Id.* Appropriately, courts assess reasonableness from the perspective of the reasonable officer on the scene, not with the benefit of hindsight. *Id.* (*citing Graham*, 490 U.S. at 397, 109 S.Ct. 1865).

The Court finds that Defendant Young is entitled to qualified immunity and summary judgment on Boyer's excessive force claim under § 1983 and state law claims of assault and battery.[6] Boyer has not introduced facts here raising genuine material factual disputes to show that what Young did was objectively unreasonable. Young clearly was acting within the scope of his employment in helping Feighenbaum when he entered the booking room and found the plaintiff kicking away at the only officer in the room. Further, Young denies that he knew of, or saw, Feighenbaum mistreating the plaintiff until he subsequently viewed the videotape.

Under state law Young is entitled to qualified immunity, as the employee of a political subdivision, unless he acted outside the scope of his employment, or with malice, in bad faith, or in a reckless manner. *See* Ohio Revised Code § 2744.03(A)(6); *Fabrey v. McDonald Village Police Dep't.*, 70 Ohio St.3d 351, 356–57, 639 N.E.2d 31 (1994). The

Court's review of the submitted record does not show any of these exceptions are available. Therefore, qualified immunity is appropriate to Defendant Young on both Counts I and II.

The Court also denies plaintiff's motion for summary judgment, which by its terms was limited to seeking judgment against Defendant City for Young's alleged use of excessive force during Boyer's booking. As plaintiff has submitted no evidence raising a genuine material · factual dispute whether Young was acting outside the scope of his employment at the time of the incident, Boyer's claim for partial summary judgment against the city on part of Count IV of his amended complaint must fail.

## V

Boyer also claims that Defendant Wendling failed to provide medical care in violation of the plaintiff's Fifth and Fourteenth Amendment due process rights. *See Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1096 (6th Cir.1992) (failure to provide medical care to pretrial detainees violates due process). Again, assuming that a pretrial detainee has a constitutional right to medical care, and that such a clearly established right is one known to reasonable officers, the Court is forced to find that Boyer has failed to allege sufficient facts to show Wendling acted unreasonably.

In fact, the record shows that Wendling had the rescue squad called after he arrived on the scene and that emergency personnel found no serious wounds or injury. Further, the record also shows that the plaintiff did not request medical care for any injuries sustained at the time of booking, either on the morning of May 27, 1995, or subsequently.

Defendant Wendling is entitled to qualified immunity and summary judgment on Count III of the plaintiff's amended complaint.

---

6. Officer Feighenbaum was convicted of assaulting Boyer. He does not ask for qualified immunity or for summary judgment.

## VI

Defendant City seeks summary judgment on count IV of the amended complaint. In it, Boyer claims Mansfield was liable for its custom or policy of using excessive force, failing to provide medical care to inmates, and not properly investigating, supervising, training, or disciplining its officials in using excessive force or providing medical care to city jail prisoners.

The language and the legislative history of § 1983 compel the conclusion that Congress did not intend a local government to be held liable solely because it employs a tortfeasor. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipal liability under § 1983 cannot be based on the traditional respondeat superior theory. *Id.* Absent a finding that the alleged constitutional violation was a result of a policy or custom of the municipality, the local government is not liable. *Id.* at 694, 98 S.Ct. 2018.

Based on the Court's determination that Young, in his official capacity, did not violate the plaintiff's constitutional rights, the Court has not granted plaintiff summary judgment against the city defendant.[7] Even if a constitutional violation has occurred, the plaintiff has not offered evidence that the alleged violation was the result of a policy or custom of the city. The arbitration report's purported discussion of disciplinary action against officers accused of using excessive force does not show a custom or policy favoring constitutional violations. The Court's review of the evidence does not show that Boyer can show his particular injury was incurred because of the execution of that [defendant city's unconstitutional custom or] policy. *Garner v. Memphis Police Dep't.*, 8 F.3d 358, 364 (6th Cir.1993), *cert. denied*, 510 U.S. 1177, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994) (citation omitted).

The record shows that defendant's police officers review the City's policy on use of force regularly. Also relevant is that Defendant Wendling placed a hold on the videotape of the incident, and issued a personal complaint against Defendant Feighenbaum. The defendant's safety service director eventually fired Feighenbaum for his actions against the plaintiff. The Defendant City also saw to it that Defendant Feighenbaum was charged, prosecuted, and convicted on the misdemeanor assault charge.

Also, the plaintiff fails to show Mansfield's training of its police officers on use of force and provision of medical care was deliberately indifferent to its citizens and caused this plaintiff's injuries. Thus, the city is not liable on failure to train and supervise claims, and is entitled to summary judgment on Count IV of the amended complaint. *See Canton v. Harris*, 489 U.S. 378, 392, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir.1989) (plaintiff needs to prove three distinct facts in failure-to-train context: training inadequate, inadequacy is the result of municipality's deliberate indifference, and causation).

## VII

For the reasons discussed within this opinion, the Court grants the motion of the three defendants for summary judgment, and denies the plaintiff's motion for summary judgment. Plaintiff Boyer still has claims remaining against at least one defendant,[8] so final judgment will not be entered.

IT IS SO ORDERED.

---

7. The Court notes for the record that the plaintiff for unknown reasons did not seek summary judgment against the city based on Defendant Feighenbaum's conduct [*see* Doc. 44].

8. The plaintiff's § 1983 claim against Defendant Feighenbaum for excessive use of force in Count I and for state law claims for assault and battery under Count II survive the Court's award of summary judgment. Other claims either are stopped by this decision, or the unknown defendants were never identified and served.